**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**UNITED STATES OF AMERICA**                                              **PLAINTIFF**

**v.**                                   **Case No. 4:18-cr-00487-02 KGB**

**JOE HARLON HAMLETT**                                                    **DEFENDANT**

## ORDER

Pending before the Court are defendant Joe Harlon Hamlett's motion to suppress and amended motion to suppress (Dkt. Nos. 93; 107). The government responded to Mr. Hamlett's motion (Dkt. No. 106). Also before the Court is Mr. Hamlett's motion to disqualify government counsel Erin O'Leary (Dkt. No. 111). Mr. Hamlett's counsel Nicki Nicolo also moved for leave to withdraw as counsel, if the Court denies Mr. Hamlett's motion to suppress (Dkt. Nos. 108; 113). The government responded to Mr. Hamlett's motion to disqualify government counsel (Dkt. No. 118).

The Court conducted a hearing on the motion to suppress, motion to disqualify government counsel, and motion for leave to withdraw as counsel for Mr. Hamlett on September 23, 2020, at which Mr. Hamlett and the government presented evidence and argument for the Court's consideration.

### I.      Background

Based upon the evidence presented at the suppression hearing, Mr. Hamlett was arrested on August 30, 2018, in the early morning hours by Captain Jeremy Ward and Officer James Kemp of the Blytheville, Arkansas, Police Department. Captain Ward has approximately 20 years of law enforcement experience, and Officer Kemp has approximately six years of law enforcement experience. Mr. Hamlett was alone at the time of his arrest. Captain Ward and Officer Kemp

testified as to events that occurred during Mr. Hamlett's arrest.  They testified that Mr. Hamlett appeared to hear and understand their commands, responded appropriately to their commands, was compliant, and was arrested pursuant to a warrant issued earlier.

Mr. Hamlett was taken to the old National Guard Armory building in Blytheville, Arkansas, where he met with Federal Bureau of Investigation Task Force Officers William Skaggs and Bobby Ephlin.  Officer Skaggs has approximately nine years of law enforcement experience; Officer Ephlin has approximately 23 years of law enforcement experience.  The meeting lasted approximately 45 minutes to one hour or a bit longer but no more than two hours.  Officers Skaggs and Ephlin testified with respect to their encounter with Mr. Hamlett.  Officer Ephlin also testified as to video evidence he previously reviewed about an Arkansas State Trooper's encounter with Mr. Hamlett during a roadside traffic stop on or about April 18, 2018, and footage from July 11, 2018, of Mr. Hamlett interacting with employees at a service window at the Mississippi County, Arkansas, landfill (Gov. Ex. C).  To summarize the video evidence as relevant here, Mr. Hamlett did not claim hearing loss during either encounter and appeared to respond appropriately to those individuals with whom he was seen communicating in the videos.

With respect to his arrest for this offense, Officers Skaggs and Ephlin met with Mr. Hamlett in a room without background noise, except for the hum of the building.  At that meeting, Mr. Hamlett executed two waiver forms.  Officer Skaggs testified that, although Mr. Hamlett claimed he was a little hard of hearing before Officer Skaggs began reviewing the *Miranda* waiver, in response Officer Skaggs provided a written copy of the form to Mr. Hamlett, and, according to Officer Skaggs, he maybe read the form more clearly and louder.  Officer Skaggs does not recall Mr. Hamlett ever mentioning again during questioning that Mr. Hamlett could not hear.  Officer Elphin recalled that Mr. Hamlett may have indicated he was kind of hard of hearing, so Officers

Skaggs and Elphin spoke up.  Officers Skaggs and Elphin believed they communicated effectively with Mr. Hamlett.

Officer Skaggs went over the *Miranda* waiver with Mr. Hamlett (Gov. Ex. A); Mr. Hamlett executed the form.  Officer Skaggs read over the form, and Mr. Hamlett had a blank copy of the form in front of him as Officer Skaggs read it.  Mr. Hamlett provided oral statements to Officers Skaggs and Ephlin.  The interview was not recorded.  Officers Skaggs and Ephlin, both of whom are experienced law enforcement officers, testified that they communicated with Mr. Hamlett, who responded appropriately during their conversation; they conducted a conversation requiring more than just "yes" or "no" answers from Mr. Hamlett.  Neither officer testified, nor has Mr. Hamlett alleged, that Mr. Hamlett asked to stop the conversation at any time because he could not hear.  Mr. Hamlett, when he complained of being cold in the room, was permitted to take a break, step out of the room, and smoke a cigarette, according to Officer Ephlin.

Mr. Hamlett turned over the cell phone in his possession to Officers Skaggs and Ephlin after executing a consent to search form (Gov. Ex. B).  Officer Ephlin testified that he went over the consent to search form in the same manner Officer Skaggs went over the *Miranda* waiver.  Officer Ephlin read the form, while Mr. Hamlett had his own copy of the form in front of him to read.  After that, Mr. Hamlett signed.

When asked to cooperate with Officers Skaggs and Ephlin and to make a recorded phone call to an alleged co-conspirator, Mr. Hamlett declined to cooperate further.

Later that same day, Mr. Hamlett was transported by other officers to Little Rock, Arkansas, for plea and arraignment.  He was appointed Ms. Nicolo as counsel.  Ms. O'Leary was present on behalf of the government at the plea and arraignment.  Ms. Nicolo bases her motions to disqualify Ms. O'Leary as counsel for the government and to move to withdraw herself as Mr.

Hamlett's counsel on events that purportedly occurred at the plea and arraignment. Specifically, she maintains, in pertinent part:

> I was appointed counsel at Mr. Hamlett's plea and arraignment hearing. I was made aware of Mr. Hamlett's severe hearing loss upon meeting Mr. Hamlett and had to go to great lengths to ensure my client could fully understand the proceedings. Assistant United States Attorney, Ms. Erin O'Leary, was present at that plea and arraignment hearing. Myself and Ms. O'Leary are the only available fact witnesses that can attest to Mr. Hamlett's severe hearing issues on August 30, 2018, and my statements are relevant, material testimony and not available elsewhere.
>
> . . .
>
> My testimony is necessary as to the factual issue regarding Mr. Hamlett's hearing loss, the extent of that hearing loss on the day in question which is the same day he was interviewed by FBI agents, and the lengths I had to go to communicate with my client which directly contradict what FBI agents are saying when they interviewed my client earlier that day. There is no one else that could attest to those matters and thus I am a material witness to the defense of Mr. Hamlett. If the statement is deemed admissible and the government introduced said statement through agent testimony, I am a material witness as to the difficulty of the communication with my client on that day in particular, the necessity of writing notes to my client to communicate to which I have a copy of, and without a recording device of that interrogation with the FBI, there is no way around my testimony and the necessity of it. . . .

(Dkt. No. 108, at 1).

At the conclusion of the suppression hearing, Mr. Hamlett's counsel admitted into evidence records from a hearing center where Mr. Hamlett has been evaluated and treated for hearing loss (Def. Ex. 1). Mr. Hamlett was evaluated on August 27, 2018, at the hearing center, and the record of that encounter is included in the exhibit (Def. Ex. 1, at 2). Other records of examinations and treatment are included (*Id.*). The Doctor of Audiology who treated Mr. Hamlett authored a letter dated August 25, 2020, with respect to Mr. Hamlett's hearing loss (*Id.*, at 7). Mr. Hamlett's counsel represents that, although the doctor wrote 2019, he intended 2018, and the Court accepts this representation. Mr. Hamlett's counsel also provided an oral proffer of anticipated testimony for the Court's consideration.

4

Mr. Hamlett's counsel filed the motion to suppress on August 20, 2020, and moved to amend the motion on September 18, 2020 (Dkt. Nos. 93; 107).  Mr. Hamlett's counsel first moved to withdraw by written motion filed September 18, 2020, and first moved to disqualify the government's lead counsel in this case on that same date (Dkt. Nos. 108; 111).  Trial in this matter is set for the week of October 5, 2020 (Dkt. No. 88).

## II.    Motion To Disqualify Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to have the Assistance of Counsel for his defence."   U.S. CONST. amend. VI.; *see United States v. Baisden,* 713 F.3d 450, 454 (8th Cir. 2013) ("The Sixth Amendment guarantees a criminal defendant the right to counsel.").  A non-indigent criminal defendant's Sixth Amendment rights encompass the right to be represented by the counsel selected by the defendant. *See generally United States v. Gonzalez–Lopez,* 548 U.S. 140 (2006); *see also Wheat v. United States,* 486 U.S. 153, 159 (1988).  The United States Supreme Court has observed that "this right was designed to assure fairness in the adversary criminal process."  *Wheat,* 486 U.S. at 158.

However, the right to retain counsel of defendant's choosing is not absolute, *Gonzalez–Lopez,* 548 U.S. at 152, because the purpose of the Sixth Amendment is to guarantee "an effective advocate for each criminal defendant," not to guarantee the counsel defendant prefers.  *Wheat,* 486 U.S. at 159.  "Where a constitutional right to counsel exists, our Sixth Amendment cases hold that there is a correlative right to representation that is free from conflicts of interest."  *Wood v. Georgia,* 450 U.S. 261, 271 (1981); *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982) (determining that this guarantee of effective assistance of counsel "includes the right to the assistance of counsel unhindered by a conflict of interest"), *overruled on other grounds by Flanagan v. United States,* 465 U.S. 259 (1984).  When the question of disqualification directly

implicates a defendant's Sixth Amendment rights "disqualification of defense counsel should be a measure of last resort. . . ." *United States v. Gearhart,* 576 F.3d 459, 464 (7th Cir. 2009) (quoting *United States v. Diozzi,* 807 F.2d 10, 12 (1st Cir. 1986)); *see also Owen v. Wangerin,* 985 F.2d 312, 317 (7th Cir. 1993) ("Attorney disqualification is 'a drastic measure which courts should hesitate to impose except when absolutely necessary.'") (quoting *Schiessle v. Stephens,* 717 F.2d 417, 419–20 (7th Cir. 1983)); *Evans v. Artek Systems Corp.,* 715 F.2d 788, 794 (2d Cir. 1983) (holding that the moving party bears a "heavy burden of proving [the] facts required for disqualification.").

Mr. Hamlett's counsel moves to withdraw herself based upon a purported conflict of interest.  Here, granting such a motion to withdraw will, by Mr. Hamlett's counsel's own representation, likely result in the need to continue the jury trial set in this matter for the week of October 5, 2020 (Dkt. No. 88).  "Whether to grant a continuance and substitution of counsel is a matter committed to the sound discretion of the district court."  *United States v. Redd,* 318 F.3d 778, 783 (8th Cir. 2003) (quoting *United States v. Swinney,* 970 F.2d 494, 499 (8th Cir.1992)).

When appointment of replacement counsel is requested, a district court is required to appoint new counsel "only when the defendant demonstrates justifiable dissatisfaction with his appointed attorney." *United States v. Kelley,* 774 F.3d 434, 438 (8th Cir. 2014) (internal quotation marks omitted).  Justifiable dissatisfaction warranting replacement of counsel includes a conflict of interest.  *Smith v. Lockhart,* 923 F.2d 1314, 1320 (8th Cir.1991).  If the defendant raises "a seemingly substantial complaint" then the district court must "inquire thoroughly into the factual basis of the defendant's dissatisfaction."  *Id.*  When a defendant raises a seemingly substantial complaint, cases from the Eighth Circuit Court of Appeals contemplate trial courts "must make the kind of inquiry that might ease the defendant's dissatisfaction, distrust, or concern." *Smith,* 923

F.2d at 1320; *see also United States v. Rodriguez,* 612 F.3d 1049, 1054 (8th Cir.2010) ("[T]he nature of the factual inquiry into potential conflicts is case-specific and ... in some instances[ ] the court would have the relevant facts without engaging in an intensive inquiry."); *United States v. Jones,* 795 F.3d 791, 797 (8th Cir.2015) (finding that, even when *no* inquiry was made, the district court "had all the information necessary to make a ruling").

When a conflict of interest exists, a court may disqualify the conflicted attorney. *See Agosto,* 675 F.2d at 969-70.   In considering whether to disqualify the attorney, a court must balance "individual constitutional protections, public policy and public interest in the administration of justice, and basic concepts of fundamental fairness." *Id.* at 970 (citing *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975)).

In evaluating a request for disqualification, courts:

must recognize a presumption in favor of [the accused's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Wheat,* 486 U.S. at 164.

The Model Rules, with amendments, govern attorneys licensed to practice law in the State of Arkansas.  Order of the Court, 702 S.W.2d 326 (Ark. 1985).  *See also* Local Rule 83.5 of the *Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas* (conditioning eligibility to practice law in this Court on the person being licensed in the jurisdiction where that person's principal law office is located and where that person principally practices law). With respect to attorneys serving as witnesses, which provides the basis for all of Mr. Hamlett's motions to withdraw and disqualify counsel, the applicable Arkansas Rules of Professional Conduct provide in Rule 3.7**:**

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:

(1) the testimony relates to an uncontested issue;

(2) the testimony relates to the nature and value of legal services rendered in the case; or

(3) disqualification of the lawyer would work substantial hardship on the client.

This rule applies regardless of who intends to offer the testimony – the lawyer's client or the opposing party. *See United States v. Perry*, 30 F.Supp.3d 514 (E.D. Va. 2014) (examining application of the rule when defense counsel may be witness for the defense and prosecution). In *Weigel v. Farmers Insurance Co.*, 158 S.W.3d 147, 153 (Ark. 2004), the Arkansas Supreme Court concluded that Rule 3.7 is applicable to cases where the attorney will be called to testify, provided that three things are demonstrated: (1) that the attorney's testimony is material to the determination of the issues being litigated; (2) that the evidence is unobtainable elsewhere; and (3) that the testimony is or may be prejudicial to the testifying attorney's client. *Weigel*, 158 S.W.3d at 153.

The Eighth Circuit Court of Appeals and other federal courts have examined other states' nearly identical versions of this rule. The Eighth Circuit has recognized that Missouri's rule "has been interpreted to mean an attorney is a 'necessary witness' only if 'there are things to which he will be the only one available to testify.'" *Macheca Transp. Co. v. Philadelphia Idem. Co.,* 463 F.3d 827, 833 (8th Cir. 2006) (quoting *State ex rel. Wallace v. Munton,* 989 S.W.2d 641, 646 (Mo. Ct. App. 1999)). In *Macheca Transport,* the Eighth Circuit held that the district court abused its discretion when it disqualified an attorney without first determining whether he would be the only witness who could testify to events surrounding a vexatious refusal to pay claim. *Id.* at 833-34.

The Fifth Circuit Court of Appeals has similarly held that: "[a] lawyer is not 'likely to be a necessary witness' when evidence pertaining to each matter to which he could testify is available

from another source." *United States v. Starnes,* 157 Fed. Appx. 687, 693-94 (5th Cir. 2005)

(quoting *Horaist v. Doctor's Hosp. of Opelousas,* 255 F.3d 261, 267 (5th Cir. 2001)).

In *Starnes,* the defendant sought to disqualify a prosecutor who had participated in two searches

relevant to defendant's case. *Starnes,* 157 Fed. Appx. at 694.  The Fifth Circuit concluded that the

prosecutor was not a necessary witness because he was not alone during the searches, and the

defendant did not allege that the prosecutor had observed anything that was not observed by the

other persons present during the search. *Id.*  "Testimony may be relevant and even highly useful,

but still not strictly necessary." *Macheca Transp. Co.,* 463 F.3d at 833.

### A.   Motion To Disqualify Ms. Nicolo

Initially, Mr. Hamlett's counsel moved prior to the suppression hearing only to disqualify

herself as counsel for Mr. Hamlett if the Court denied Mr. Hamlett's motion to suppress and

deemed admissible at trial Mr. Hamlett's statements to Officers Skaggs and Ephlin (Dkt. No. 108)

(hereinafter "conditional motion to withdraw").  At the start of the suppression hearing, the Court

raised with Mr. Hamlett's counsel whether the arguments advanced in support of her conditional

motion to withdraw applied to the issues to be addressed by the Court at the suppression hearing.

Mr. Hamlett's counsel then orally moved to withdraw from representing Mr. Hamlett at the start

of the suppression hearing (hereinafter "oral motion to withdraw").  After hearing argument from

counsel for Mr. Hamlett and the government, the Court denied the oral motion to withdraw, with

the understanding that counsel and the Court would revisit the issue at the conclusion of the

suppression hearing with respect to the conditional motion to withdraw.

At the conclusion of the suppression hearing, for the same reasons stated in the written

motion and on the record in open court, counsel for Mr. Hamlett moved the Court to reconsider its

denial of the oral motion to withdraw and renewed the conditional motion to withdraw with respect

to proceeding as Mr. Hamlett's counsel at trial.  At the conclusion of the suppression hearing, the Court took the motions under advisement.  For the following reasons, the Court denies counsel for Mr. Hamlett's motion to reconsider the Court's denial of the oral motion to withdraw and denies the conditional motion to withdraw.

Despite her argument on behalf of Mr. Hamlett, Mr. Hamlett's counsel has failed to identify "'things to which [s]he will be the only one available to testify.'"  *Macheca Transp. Co.,* 463 F.3d at 833 (quoting *State ex rel. Wallace,* 989 S.W.2d at 646).  Mr. Hamlett's counsel acknowledges that her testimony relates to the purported severity of Mr. Hamlett's alleged hearing loss.  She contends that her testimony will relate to the steps she had to take to communicate effectively with Mr. Hamlett in the courtroom at plea and arraignment and at that same time one-on-one in a smaller room on August 30, 2018.

Mr. Hamlett's counsel in a filing with the Court maintains that he did not have hearing aids in his ears or in his possession at the time of his arrest (Dkt. No. 93, ¶ 3).  There is no record evidence to that effect before the Court, other than a question posed to Officer Skaggs.  Officer Skaggs was asked by Mr. Hamlett's counsel if Mr. Hamlett had hearing aids in during his meeting with Mr. Hamlett, and Office Skaggs testified:  "Not to my recollection, no."  When asked whether Mr. Hamlett requested hearing aids during his meeting with Officers Skaggs and Ephlin, Officer Skaggs testified that Mr. Hamlett did not make such a request.  Further, there is record evidence from the videos reviewed by Officer Ephlin and shown to the Court that on two prior occasions in 2018 Mr. Hamlett interacted with individuals in various settings with no complaints of hearing loss.

Mr. Hamlett's counsel was not present at the time of Mr. Hamlett's arrest or during his meeting with Officers Skaggs and Ephlin after his arrest.  In other words, although his counsel saw

Mr. Hamlett later that day, even she did not see him at the time of the arrest or during his meeting with Officers Skaggs and Ephlin, and she has no evidence to offer with respect to those encounters.

To the extent she wishes to present evidence about the purported severity of Mr. Hamlett's alleged hearing loss at a different time, Mr. Hamlett was evaluated by a Doctor of Audiology three days prior to his arrest whose medical record of the encounter was admitted into evidence by Mr. Hamlett at the suppression hearing.

With respect to the steps his counsel took in the courtroom at plea and arraignment to communicate with Mr. Hamlett, other individuals – in addition to Mr. Hamlett's counsel and counsel for the government – were in the courtroom observing these events during plea and arraignment, including at a minimum court staff. To the extent Mr. Hamlett's counsel offers to testify as to steps she took one-on-one in a smaller room to communicate with Mr. Hamlett that day, again, her testimony would relate to the purported severity of Mr. Hamlett's alleged hearing loss at a different time than during his arrest and encounter with Officers Skaggs and Ephlin.

For all of these reasons, the Court declines to find that Mr. Hamlett's counsel is the only witness who could testify about the issues on which she proffers testimony. Therefore, the Court denies the motion to reconsider the Court's denial of the oral motion to withdraw and denies the conditional motion to withdraw as counsel for Mr. Hamlett.

The Court makes this observation. The Second Circuit Court of Appeals recognizes the unsworn witness rule; the rule becomes an issue when an attorney participates in or witnesses the events to be explored at trial. *See United States v. Locascio,* 6 F.3d 924, 933 (2d Cir. 1993). It applies in those circumstances where "the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination" regardless of whether he is a necessary witness. *Id.* at 933. Counsel providing unsworn testimony

is not at odds with her client because there is no conflict of interest. *See id.* at 933–34. Rather, "the detriment is to the government, since the defendant gains an unfair advantage, and to the court, since the factfinding process is impaired." *Id.* at 934. Even under the unsworn witness rule, attorney disqualification is a "drastic remedy," reserved for cases where an attorney has "entangled himself to an extraordinary degree" in the events at issue at trial. *See United States v. Evanson,* 584 F.3d 904, 909 (10th Cir.2009); *Locascio,* 6 F.3d at 934.

Based on the Court's research, the Eighth Circuit Court of Appeals has not adopted an unsworn witness rule. Assuming, arguendo, that the Eighth Circuit Court of Appeals would adopt such a rule, the government has not moved to disqualify Ms. Nicolo. Instead, Ms. Nicolo moves to disqualify the government's counsel and herself.

### B.     Motion To Disqualify Ms. O'Leary

Mr. Hamlett moves to disqualify counsel for the government Ms. O'Leary, claiming that Ms. O'Leary along with Ms. Nicolo "are the only available fact witnesses to testify as to these facts on August 30, 2018," referencing Mr. Hamlett's alleged hearing loss throughout the plea and arraignment proceeding (Dkt. No. 111, at 1-2). The government responded in opposition to the motion (Dkt. No. 118). The Court heard argument from counsel at the hearing on September 24, 2020, and the motion is ripe. A similar analysis and rationale apply to the Court's consideration of this motion. With respect to the steps his counsel took in the courtroom at plea and arraignment to communicate with Mr. Hamlett, other individuals – in addition to Mr. Hamlett's counsel and counsel for the government – were in the courtroom observing these events during plea and arraignment, including at a minimum court staff. Mr. Hamlett has not demonstrated that Ms. O'Leary is a necessary witness. For all of the reasons stated on the record in open court and in

this Order, the Court denies Mr. Hamlett's motion to disqualify government counsel Ms. O'Leary (Dkt. No. 111).

### III.    Motion To Suppress

Mr. Hamlett also moves to suppress the statements made to Officers Skaggs and Elphin and the evidence seized from the cell phone in Mr. Hamlett's possession that he turned over.  In response to the motion to suppress, the government must prove voluntariness by a preponderance of the evidence.  *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).  The Court will first address whether Mr. Hamlett knowingly, voluntarily, and intelligently waived his *Miranda* rights.  Mr. Hamlett was read and executed a written *Miranda* warning prior to questioning (Gov. Ex. A).  Mr. Hamlett also was read and executed a consent to search prior to turning over the cell phone in his possession to Officers Skaggs and Elphin (Gov. Ex. B).  Nevertheless, Mr. Hamlett argues that his waiver of *Miranda* rights and his execution of the consent to search were not voluntary.

Mr. Hamlett was in custody after arrest at the time of questioning, so Officers Skaggs and Elphin were required to give Mr. Hamlett the *Miranda* warnings and seize the cell phone in his possession by consent or search warrant, which they did.  To be voluntary, knowing, and intelligent, a defendant's waiver of *Miranda* rights must meet two requirements.  First, the waiver must be "'voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'"  *United States v. Vinton,* 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine,* 475 U.S. 412, 421 (1986)).  Second, the defendant must waive his rights with "'a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'"  *Id.*  In determining whether a waiver is valid, courts consider the totality of the circumstances.  *Id.*

Additionally, the waiver need not be an express waiver. *Berghuis v. Thompkins,* 560 U.S. 370 (2010). "[A] waiver of *Miranda* rights may be implied through 'the defendant's silence, coupled with an understanding of his rights and a course of conduct indicating waiver.'" *Id.* at 384 (quoting *North Carolina v. Butler,* 441 U.S. 369, 373 (1979)). In other words, where it can be shown that "a Miranda warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.* In *Berghuis,* the United States Supreme Court concluded that:

> Although *Miranda* imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a *Miranda* warning, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights. As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protections those rights afford.

*Id.* at 385 (citations omitted).

Here, there is no evidence that law enforcement intimidated, coerced, or deceived Mr. Hamlett to get him to waive his *Miranda* rights. Mr. Hamlett does not make this argument, nor is there record evidence to support such an argument. Accordingly, the Court concludes that Mr. Hamlett's waiver of his *Miranda* rights was "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran,* 475 U.S. at 421.

Turning to the second requirement for a knowing, voluntary, and intelligent waiver of *Miranda* rights, the record reflects that: (1) Officer Skaggs read Mr. Hamlett his *Miranda* rights; (2) Mr. Hamlett reviewed the waiver form provided to him; (3) Mr. Hamlett orally said "yes" or a version of "yes" to each question, which response Officer Skaggs then recorded on the form; (4) Mr. Hamlett expressly waived his rights by signing the waiver form; and (5) Mr. Hamlett impliedly

waived his rights by answering Officer Skaggs and Elphin's questions.  There is no indication that in his interactions at the time of his arrest and interview that Mr. Hamlett did not understand or respond appropriately.  There is no contention that Mr. Hamlett has cognitive issues.  There is no contention that Mr. Hamlett is unable to read, and he in fact admits in a recent filing:  "Defendant had to read the allegations in the Federal Complaint to himself because he could not hear Ms. Nicolo after several attempts to read the Complaint to him." (Dkt. No. 93, ¶ 4).  Moreover, Mr. Hamlett clearly understood his *Miranda* rights because he invoked his rights and refused to cooperate with the officers by placing a recorded phone call to an alleged co-conspirator, thereby ending the interview.  Accordingly, the Court concludes that Mr. Hamlett fully understood "the nature of the right being abandoned and the consequences of the decision to abandon it[,]" when he waived his *Miranda* rights.  Likewise, based on the totality of the circumstances presented, the Court reaches the same conclusion with respect to the consent to search form reviewed and executed by Mr. Hamlett.

In considering Mr. Hamlett's assertions that his hearing impairment caused his waiver to be involuntary, the Court is unconvinced by these arguments.  Some courts have found valid *Miranda* waivers when a deaf person has been subject to custodial interrogation without an interpreter.  *See, e.g., Stanley v. Lazaroff*, 82 Fed. Appx. 407, 422 (6th Cir. 2003) (valid waiver where officer communicated warnings to hearing-impaired defendant in "pidgin" sign language); *People v. McBride*, 743 N.W.2d 884 (Mich. 2008), *rev'g*, 729 N.W.2d 551 (Mich. Ct. App. 2006) (hearing-impaired defendant validly waived her  Miranda rights by signing a written form, even though the ASL interpreter did not explain the form or confirm that she understood it); *State v. Perry*, 13 S.W.3d 724, 739 (Tenn. Crim. App. 1999); *People v. Brannon*, 486 N.W.2d 83, 87-88 (Mich. Ct. App. 1992).  At least one court determined on the facts presented that a hearing

impairment or cognitive difficulty prevented a knowing waiver but did not prevent a voluntary waiver. *United States v. Conquering Bear*, Case No. 3:17-cr-30110-RAL, 2018 WL 4334066 (D. S.D. 2018). The court reasoned that a finding of involuntariness was required to suppress the statements entirely. *Id.* at *9. As a result, the court ruled that the statements were not excluded for all purposes but instead could still be used to impeach any conflicting testimony the defendant might offer. *Id.*

In summary, after considering the totality of the circumstances, the Court concludes that Mr. Hamlett's waiver of his *Miranda* rights and execution of the consent to search were voluntary, knowing, and intelligent based on the Court's findings of fact from the suppression hearing. The Court denies Mr. Hamlett's motion to suppress.

## IV.    Conclusion

For the reasons stated in open court and for the foregoing reasons, the Court denies the motion to suppress filed by Mr. Hamlett (Dkt. No. 93), the first motion to amend or correct the motion to suppress (Dkt. No. 107), the oral motion to withdraw made at the suppression hearing, the oral motion to reconsider the Court's ruling on the oral motion to withdraw made at the suppression hearing, the first motion to withdraw (Dkt. No. 108), and the motion to disqualify government counsel (Dkt. No. 111).

It is so ordered this 29th day of September, 2020.

Kristine G. Baker
United States District Judge